LOCHNER, RECEIVER *v.* MARTIN ET UX.

[No. 92, September Term, 1958.]

*Decided January 19, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Austin W. Brizendine* and *Irving B. Grandberg,* for appellant.

*Robert R. Bair,* with whom were *Richard W. Emory* and *Venable, Baetjer & Howard* on the brief, for appellees.

PRESCOTT, J., delivered the opinion of the Court.

The sole question presented on this appeal is whether landlords may retain the advance payment of rent for the last five months of a five-year lease, where the tenant's use and enjoyment of the premises for the last five months of the term was prevented by the tenant's own default and where the lease contains no provision for a refund in the event of such default.

The facts are undisputed. In October, 1952, at the time of the signing of the five-year lease, Samuel Gordon, tenant, paid Joseph J. Martin and his wife, landlords, in addition to a regular monthly rental payment, the net sum of $2,470.30, representing rental for the last five months of the term, less interest thereon. Samuel Gordon thereupon went into possession of the leased premises and carried on a sales and service business which he incorporated in June, 1953, under the name of Gordon Motors, Inc. With the consent of the landlords, the lease was assigned to the corporation.

In February, 1954, Gordon Motors, Inc. was placed in receivership in the Circuit Court for Baltimore County. The assets of the business were sold and possession of the premises relinquished to the landlords. The landlords thereupon re-rented the premises as of May 1, 1954, at the same rental as provided in the original lease, which rental was collected throughout the remainder of the term of said original lease. This new lease was also for a five-year period, terminating in 1959.

George J. Lochner, appellant herein as receiver for Gordon Motors, Inc., waited until the expiration of the term of the lease and then filed a petition in the receivership proceedings, the object of which was to obtain an order requiring Joseph J. Martin and his wife, the appellees, to turn over to him the advance payment of rent for the last five months of the term, which, with interest added, amounted to $3,187.50.

Appellees answered the petition claiming absolute title to the advanced payment of rent and setting forth their expenses and losses occasioned by the abandonment of the premises by Gordon Motors, Inc. The matter was set down for a hear-

ing. A stipulation of facts was dictated into the record and the case was argued. No question is raised as to the procedure adopted. Cf. *Lehman, Exec. v. Kairys, Exec.*, 217 Md. 359, 366, 142 A. 2d 546. The chancellor ruled that the payment of $2,470.30 was in fact a payment of rent in advance; that it became and was the property of the landlords; that the tenant had no title to it; and that the receiver stood in no better position than the tenant. Accordingly he signed an order dismissing the petition. From this order, the receiver has appealed.

The lease provided for a rental of $7,650, per year, payable in equal monthly instalments of $637.50, in advance, on the first day of each month during the term of the lease. The lease then states:

> "The Tenant further covenants and agrees at the time of the signing of this lease to pay the Landlord the sum of THREE THOUSAND ONE HUNDRED EIGHTY-SEVEN DOLLARS and FIFTY CENTS ($3,187.50), representing rental for the months of June, July, August, September and October, 1957, Less the sum of SEVEN HUNDRED SEVENTEEN DOLLARS and TWENTY CENTS ($717.20), representing interest at 4½% for the term of five (5) years, or a net sum of TWO THOUSAND FOUR HUNDRED SEVENTY DOLLARS and THIRTY CENTS ($2,470.30). This payment is for the rent of such months exclusively and does not relieve the Tenant from his obligation to pay the sum of $637.50 on the first day of each and every month during the continuance except the months of June, July, August, September and October, 1957."

The tenant, by Article Third of the lease, covenanted not to assign the lease without the prior written consent of the landlords; and, by said Article, it was further provided that the appointment of a receiver would be classified as an assignment within the meaning of the lease.

Article Eighth of the lease abates the rent falling due in

the event of total accidental destruction of the premises; but there is no provision that requires the landlords to refund the advance payment in the event of total destruction prior to the last five months of the term; and there is no provision for a refund to the tenant of the fund in the event of premature termination of the lease by reason of the tenant's default. The lease attaches no conditions to the immediate application of the fund to the future rent specified.

Article Ninth of the lease provides that in the event of the violation of any of the covenants, terms or conditions of the lease by the tenant, which shall remain uncured for a period of fifteen days, the landlords may, at their option, cancel and annul the lease or relet the premises as the agents of the tenant.

The appellant first argues that the landlords relet the premises as agents for the tenant under the provisions of Article Ninth; but quickly shifts to the alternative argument that the landlords' action after default by the lessee amounted to an election to cancel and annul the lease. We think it is clear that the latter is correct. The landlords, prior to the sale of the assets of the lessee on the leased premises by the receiver, made improvements for the new tenant without the consent or permission of the receiver. They re-entered and took possession of the demised premises, and began the new tenancy as of May 1, 1954, giving the new tenant free rent for the month of April. The new lease was for a longer period than the original lease had to run. They filed a claim in the receivership proceedings for rent owing at the time only and no claim was made for possible future rent. These actions, when considered together, were inconsistent with anything except the termination of the tenancy by the landlords. *Calvert Bldg. & Const. Co. v. Winakur*, 154 Md. 519, 535, 536, 537, 141 A. 355; 3 Thompson, *Real Property* (Perm. Ed.), sec. 1461. Cf. *Peterson v. Betts*, 165 P. 2d 95 (Wash.).

The chancellor thought that the recent case of *Tatelbaum v. Chertkof*, 212 Md. 475, 129 A. 2d 680, decided by us in 1957, was controlling, and we agree. In cases of this nature, where a lease requires payment of rent in advance as dis-

tinguished from a security deposit, it is well-established law that the lessor may retain the payment upon default of the lessee in paying rent for a previous period, constituting a breach of the lease, in the absence of a provision for its refund, for the right and title thereto passes upon the execution of the lease or the payment required, and prevention of its application to the part of the term for which it was paid arises from the lessee's own misconduct. *Tatelbaum v. Chertkof, supra,* and cases cited; Anno. 27 A. L. R. 2d 656.

The reasons for the above principle are apparent. Except in cases arising under the Statute of 11 Geo. 2, Ch. 19, Sec. 15 (or Code (1957) Article 75B, Section 4), rent is not apportionable. *Martin v. Martin,* 7 Md. 368, 379. Cf. *Jersey Boulevard Corp. v. Lerner Stores Corp.,* 168 Md. 532, 539, 178 A. 707. It does not accrue from day to day, but accrues on the day it is payable. *Jersey Boulevard Corp. v. Lerner Stores Corp., supra; Stiles v. Lambert,* 94 So. 2d 784 (Ala. App.). Accordingly, the rent herein involved, although paid for a portion of the term four and one-half years in the future, was accrued, and became the property of the landlords, on the day it was paid. 1 Tiffany, *Landlord and Tenant* (2nd Ed.) p. 1179; *Stiles v. Lambert, supra.* Cf. *Tatelbaum v. Chertkof, supra.*

Ordinarily in determining whether money paid as in the case at bar be a payment of rent or a deposit for security, we must arrive at the intention of the parties as manifested in the terms of the lease construed in the light of surrounding circumstances. *Tatelbaum v. Chertkof, supra; Schoen v. New Britain Trust Co.,* 150 A. 696 (Conn.). It is, of course, significant that the parties in the lease specifically termed the payment as "rent." It is likewise significant that the parties adopted almost the identical language of the lease construed in *Sline Properties, Inc. v. Colvin,* 190 F. 2d 401 (4th Cir. 1951), a case decided about eight months before the execution of the agreement herein. That case involved a lease of Maryland property and the Court held that the terms of the lease provided for prepaid rent, not a security deposit, and upon premature termination of the agreement, the lessor need not return the advance rent to the lessee's trustee in bank-

ruptcy. It may also be noted that the provision of the lease construed in the *Tatelbaum* case, *supra*, is, in substance, markedly similar to the above quoted section of the agreement involved herein. However, in this case we are not called upon to determine whether the money paid herein was a payment of rent or a deposit for security. The appellant concedes it was a payment of rent, and tries to distinguish *Tatelbaum*, *supra*, by stating that there the lease had not expired when suit was brought; that there the receiver was able to show damages equal to the rent paid; while here the lease is over and, because of the terms of the new lease under which the appellees collected the same amount of rental as they would have under the original lease, the appellees have suffered no loss; consequently, they argue (a) that they are entitled to a return of the money as the lease was cancelled and rent cannot accrue upon a lease no longer in existence, and (b) that it would unjustly enrich the appellees to permit them to retain the same.

(a)

Under this heading, the appellant cites 35 C. J. pp. 1093, 1094, *Watson v. Merrill*, 136 F. 359 (8th Cir. 1905), and *O'Brien v. Illinois Surety Co.*, 203 F. 436 (6th Cir. 1913). We shall not consider these rather old authorities in detail, as they are not in point. None of them deals with the question of prepaid rent. The most that can be obtained from them from the appellant's standpoint is a statement of the principle that an unqualified taking of possession by the lessor and reletting of the premises by him, if done pursuant to the tenant's surrender, constitute an acceptance of the surrender and releases the tenant from the future payment of rent. This has no applicability to the facts here. The question being considered is whether advance rent that has accrued and been paid may be recovered by a lessee's receiver, when the lease has been terminated as a result of the lessee's misconduct. As indicated above, the answer is generally in the negative. *Tatelbaum v. Chertkof*, *supra*, and cases cited; 32 Am. Jur., *Landlord and Tenant*, Sec. 875; *Householder v. Black*, 62 So. 2d 50 (Fla.); *Phegley v. Enke's City Dye Works*, 272 P. 898, 901, 902 (Or.); *Sline Properties v. Colvin*, *supra*.

(b)

This brings us to the final contention of the appellant: unjust enrichment. He claims that the default of the tenant under the terms of the lease was not wilful and deliberate, as insolvency induced a receivership as a result of a creditor's petition. If we assume, without deciding, that the breach by the tenant was not wilful or deliberate, we are still unable to see that the appellant has made out a proper case for restitution upon the ground of unjust enrichment of the appellees. In *Quillen v. Kelley,* 216 Md. 396, 140 A. 2d 517, we pointed out that the *Restatement, Contracts,* Sec. 357 (2) provides: "The plaintiff has no right to compensation for his part performance * * * if the contract provides that it may be retained and it is not so greatly in excess of the defendant's harm that the provision is rejected as imposing a penalty." We then stated at page 406:

> "It is apparent that it would be difficult, if not impossible, to formulate a precise and comprehensive rule in those cases where the vendee proves that the vendor's benefit exceeds his loss, as to the exact percentage of the total contract-price that it would be 'just' or 'unjust' to permit the vendor to retain (i.e. whether or not it would amount to a penalty or a forfeiture); but each case should be considered and decided on its own facts and circumstances, and judgment rendered in accordance with justice and equity."

In this case, the appellees received $2,470.30 as advance rent. The lease called for a total rental of $38,250. Prior to the renting of the premises to the tenant, the landlords advanced a sum of money, the exact amount of which is not disclosed by the record, to prepare its building for occupancy by the tenant; and, under the terms of the lease, the tenant received a first refusal to lease the property again for a period of five years. In addition, the landlords expended $1,147.50 as commissions for renting the premises. Under these circumstances we find no sufficient basis to invoke the doctrine of unjust enrichment, as we do not consider the amount that

is to be retained by the appellees "so greatly in excess of" their harm that it should be "rejected as imposing a penalty." Cf. *Loew v. Antonick,* 310 P. 2d 825 (Ariz. 1956).

We hold that as the money was received by the appellees for the payment of rent in advance, title thereto passed unto the appellees at the time of payment; and, under the circumstances of this case, they are not unjustly enriched by its retention.

*Order affirmed, with costs.*